BRYAN, Judge.
J.L.W. (“the mother”) appeals a judgment awarding E.O.J. (“the paternal grandmother”) visitation with T.O. (“the child”), the mother’s two-year-old son. We reverse and remand.
In November 2005, K.O., the paternal grandmother’s 31-year-old son, was killed in an automobile accident. K.O. had lived with the mother for the seven and one-half years immediately preceding his death, and the mother was pregnant with his child when he died. K.O. and the mother had planned to be married on May 5, 2005, but the mother had called off the wedding because of KO.’s problems with alcohol and drugs. In January 2006, the mother gave birth to the child.
The paternal grandmother was at the hospital when the child was born. When the mother had to return to work the second week after the child’s birth, the paternal grandmother, the child’s maternal grandmother, and A.M., the paternal grandmother’s daughter, shared the responsibility of keeping the child while the mother was at work. This arrangement continued until February 22, 2006.
On February 22, 2006, the paternal grandmother was at the mother’s home and overheard a conversation between the mother and her brother indicating that the mother had given her brother KO.’s clothes. The paternal grandmother confronted the mother and asked her to get the clothes back from her brother and to give them to the paternal grandmother. The mother refused. The paternal grandmother then asked the mother’s brother to give her the clothes. The mother told her brother not to do so. An argument ensued, and the mother ordered the paternal grandmother to leave her home and told her that she would never see the child again. Following this disagreement, the mother terminated the paternal grandmother’s contact with the child. A.M., however, continued keeping the child while the mother worked.
Thereafter, the paternal grandmother sent the mother several letters requesting that the mother allow the paternal grandmother to see the child while A.M. was keeping him, but the mother did not respond to the paternal grandmother’s letters. However, A.M., without the mother’s knowledge, allowed the paternal grandmother to see the child while A.M. was keeping him. When the mother learned that A.M. had allowed the paternal grandmother to see the child, she told A.M. not to do so.
*729 In June 2006, the paternal grandmother employed a lawyer, and the lawyer sent the mother a letter requesting that she allow the paternal grandmother to see the child; however, the mother did not respond to the lawyer’s letter. Subsequently, the mother informed A.M. that she could no longer keep the child because the mother’s lawyer had advised her that A.M., as the daughter of the paternal grandmother, had a conflict of interest.
The mother has a good relationship with the child’s paternal grandfather, who is divorced from the paternal grandmother, and has continuously allowed him to visit the child since the child’s birth. The mother also allows the child’s maternal grandparents to visit the child.
When the paternal grandmother continued to send the mother letters requesting that the mother allow her to see the child, the mother, in August 2006, threatened to take action against the paternal grandmother for harassment if she did not stop sending the letters.
On October 17, 2006, the paternal grandmother petitioned the Jefferson Circuit Court to determine the child’s paternity and to grant her visitation with the child pursuant to § 30-3-4.1, Ala.Code 1975, Alabama’s grandparent-visitation statute.[1] *730 After the paternal grandmother filed her action, the mother began allowing the paternal grandmother to visit with the child and to talk to the child on the telephone.
The mother moved the trial court to dismiss the paternal grandmother’s petition on the ground, among others, that the paternal grandmother’s claim seeking visitation sought to apply the grandparent-visitation statute in an unconstitutional manner so that it infringed upon the mother’s constitutional right to make decisions regarding the care, custody, and control of the child. Thereafter, the trial court appointed a guardian ad litem for the child and held an ore tenus hearing regarding the paternity issue. In February 2007, the trial court entered an order determining that K.O. was the father of the child.
In March 2007, the mother moved the trial court to join the attorney general of the State of Alabama as a party so that she could pursue her challenge to the constitutionality of the statute, and the trial court granted her motion. Following his receipt of notice of the mother’s challenge to the constitutionality of the statute, the attorney general filed a brief with the trial court. In his brief, the attorney general asserted that the statute was constitutional, both facially and as applied.
The trial court held an ore tenus hearing regarding the visitation issue in June 2007. At the hearing, the mother admitted that she had made a mistake in preventing the paternal grandmother from seeing the child and that the child had never been injured while he was in the care of the paternal grandmother. The mother also testified that she had corrected her mistake by allowing the paternal grandmother to have visitation again and that she intended to allow the paternal grandmother to visit with the child in the future; however, she testified that she was nonetheless opposed to the trial court awarding the paternal grandmother formal visitation rights. On July 5, 2007, the trial court entered a judgment stating, in pertinent part:
“Following testimony of the parties and introduction of evidence, the Court is of the opinion that the following Order is due to be entered. Therefore it is
“ORDERED, ADJUDGED and DECREED as follows:
“1. That the Court finds that the statute is not unconstitutional as applied to this matter.
*731 “2. That the Petition for Grandparent Visitation is GRANTED.
“3. The [paternal grandmother] may have reasonable visitation as agreed upon between the parties but shall be a minimum of four hours per month. In the event the parties cannot agree upon a time, said visitation shall take place on the fourth Saturday of each month from noon until 4:00 p.m.
“4. All visitation by the [paternal grandmother] must be supervised at all times by the [child’s paternal] aunt [A.M.], the [mother] or any other person agreed to between the parties.
“5. The [paternal grandmother] shall be responsible for the arrangements of the transportation of the minor child. However, she may not drive the minor child.[2]
“6. During the periods of visitation, the [paternal grandmother] may not drive with the minor child in the automobile.
“7. During the periods of visitation, the [paternal grandmother] shall abide by the caretaking and religious preferences of the mother.
“8. Neither party shall make disparaging remarks regarding the other party in the presence of the minor child.
“9. This Court finds that the [paternal grandmother] had maintained regular contact with the minor child.
“10. This Court finds that the [mother] terminated [the paternal grandmother’s] contact with the [child] after becoming angry with the [paternal] grandmother.
“11. The [mother] has admitted that the child was never injured in the [paternal grandmother’s] care.
“12. The [mother] admitted that she made a mistake when she terminated visitation.”
On July 18, 2007, the paternal grandmother filed a Rule 59(e), Ala. R. Civ. P., postjudgment motion seeking an increase in the amount of visitation. The mother filed a notice of appeal to this court on July 25, 2005.[3] On August 1, 2007, the trial court denied the paternal grandmother’s Rule 59(e) postjudgment motion. On August 3, 2007, the mother filed a Rule 59(e) postjudgment motion. The mother’s motion asserted, among other things, that the trial court’s judgment applied the grandparent-visitation statute in an unconstitutional manner so that it infringed upon the mother’s constitutional right to make decisions regarding the care, custody, and control of the child.
The trial court did not rule on the mother’s Rule 59(e) postjudgment motion. Consequently, pursuant to Rule 59.1, Ala. R. Civ. P., the mother’s Rule 59(e) post-judgment motion was denied by operation of law on November 1, 2007, the 90th day after it was filed. The mother’s notice of appeal, which had been held in abeyance pending the resolution of the postjudgment motions, became operative upon the denial of her Rule 59(e) postjudgment motion.[4]
“““[W]hen a trial court hears ore tenus testimony, its findings on disputed *732 facts are presumed correct and its judgment based on those findings will not be reversed unless the judgment is palpably erroneous or manifestly unjust.’ ” ’ Water Works & Sanitary Sewer Bd. v. Parks, 977 So.2d 440, 443 (Ala.2007) (quoting Fadalla v. Fadalla, 929 So.2d 429, 433 (Ala.2005), quoting in turn Philpot v. State, 843 So.2d 122, 125 (Ala.2002)). ‘ “The presumption of correctness, however, is rebuttable and may be overcome where there is insufficient evidence presented to the trial court to sustain its judgment.” ’ Waltman v. Rowell, 913 So.2d 1083, 1086 (Ala.2005) (quoting Dennis v. Dobbs, 474 So.2d 77, 79 (Ala.1985)). ‘Additionally, the ore tenus rule does not extend to cloak with a presumption of correctness a trial judge’s conclusions of law or the incorrect application of law to the facts.’ Wattman v. Rowell, 913 So.2d at 1086.”
Retail Developers of Alabama, LLC v. East Gadsden Golf Club, Inc., 985 So.2d 924, 929 (Ala.2007).
On appeal, the mother argues that the trial court’s judgment awarding the paternal grandmother visitation applied the grandparent-visitation statute in an unconstitutional manner so that it infringed upon her constitutional right to make decisions regarding the care, custody, and control of the child. Specifically, the mother argues that the United States Constitution gives her the fundamental right to make the decision whether a relationship with the paternal grandmother would be beneficial to the child in the first instance; that the United States Constitution requires the trial court to presume that her decision regarding the amount, method, and duration of the paternal grandmother’s visitation with the child is in the best interests of the child; and that, instead of presuming that the mother’s decision regarding the amount, method, and duration of visitation with the child is in the best interests of the child, the trial court erroneously used the statute as an excuse for making an independent decision concerning what visitation with the paternal grandmother would be in the best interests of the child.
In J.W.J. v. P.K.R., 976 So.2d 1035 (Ala.Civ.App.2007), the father of a child challenged a trial court’s judgment awarding the child’s maternal grandparents visitation on similar grounds. In that case, this court stated, in pertinent part:
“The father next argues that the Grandparent Visitation Act is unconstitutional as applied to him [because, he says] ... the circuit court failed to give any presumption in favor of his visitation preferences.
[[Image here]]
“... [WJe agree that a trial court would act unconstitutionally if, when acting on a petition for grandparent visitation, it failed to afford a presumption that the living parent’s decision as to the amount, method, and duration of visitation was in the best interests of the child. The question presented here is whether the circuit court failed to apply that presumption, thus unduly infringing on the father’s due-process rights.
“In this case, the circuit court entered a very detailed six-page order. In that order, the circuit court, citing Dodd [v. Burleson, 932 So.2d 912 (Ala.Civ.App.2005) ], indicated that in deciding the visitation issue, it had considered ‘a variety of factors,’ including:
“ ‘[T]he nature and stability of the relationship between the child and the grandparent seeking visitation; the amount of time spent together; the potential detriments and benefits to the child from granting visitation; the effect granting the visitation would have on the child’s relationship with the parents; the physical and emotional health of all the adults involved, *733 the parents and the grandparents alike; the stability of the child’s living and schooling arrangements; the wishes and preferences of the child.’
“The circuit court also stated that it had considered the ‘parent’s own determination regarding the visitation.’ However, the circuit court did not indicate that it gave any greater weight to the father’s determination than it did the other factors it considered. The circuit court did not explicitly recognize that the father’s decision is presumed to be in the best interests of the child.
“In the body of the order, the circuit court maintained that the visitation issue required a judicial resolution because the father and the maternal grandparents could not agree as to the appropriate visitation schedule and that it would be in the child’s best interests if the visitation controversy could be finally resolved in a manner that would best preserve the relationship between the child and the maternal grandparents. Those comments imply that the circuit court did not give any special presumption in favor of the father’s visitation decision. The circuit court did not note that when the parties disagree as to the appropriate visitation schedule, the parent’s position should be presumed to be in the best interests of the child. The circuit court further did not note that its role in deciding a dispute over a grandparent-visitation issue is limited to determining whether the grandparents have properly rebutted the presumption in favor of the parent’s decision. Instead, the circuit court improperly used a simple best-interests analysis to reach its own independent decision as to the mode of visitation that would best serve the interests of the child.
“In Troxel [v. Granville, 530 U.S. 57 (2000) ], the Court criticized the Washington statute at issue for granting trial courts the power to unilaterally impose a visitation plan on parents based on the trial court’s own determination of the best interests of the child. The Court stated:
“ ‘Once the visitation petition has been filed in court and the matter is placed before a judge, a parent’s decision that visitation would not be in the child’s best interest is accorded no deference. [The Washington statute] contains no requirement that a court accord the parent’s decision any presumption of validity or any weight whatsoever. Instead, the Washington statute places the best-interest determination solely in the hands of the judge. Should the judge disagree with the parent’s estimation of the child’s best interests, the judge’s view necessarily prevails. Thus, in practical effect, in the State of Washington a court can disregard and overturn any decision by a fit custodial parent concerning visitation whenever a third party affected by the decision files a visitation petition, based solely on the judge’s determination of the child’s best interests.’
530 U.S. at 67 (quoted in R.S.C. [v. J.B.C.], 812 So.2d [361] at 371 [ (Ala.Civ.App.2001) ]). The Court held that this approach was unconstitutional because ‘the decision whether [a grand-parental] relationship would be beneficial in any specific case is for the parent to make in the first instance.’ 530 U.S. at 70. ‘ “It is not within the province of the state to make [a different decision] concerning the custody of children merely because it could make a ‘better decision.’ ” ’ Troxel, 530 U.S. at 63 (quoting In re Smith, 137 Wash.2d 1, 20, 969 P.2d 21, 31 (1998)).
“Because we conclude that the circuit court failed to give the appropriate presumptive effect to the father’s visitation decisions and decided the case based solely on its own view of the best inter *734 ests of the child, we agree that the circuit court’s order unduly infringes upon the father’s due-process rights. Accordingly, we reverse the judgment and remand the case for further proceedings consistent with this opinion.”
976 So.2d at 1040-1043 (emphasis added; footnotes omitted).
In the case now before us, the mother made a decision that visitation should be reinstituted with the paternal grandmother after the paternal grandmother filed her action, and the mother testified that she intended to continue that visitation in the future. The trial court’s judgment indicates that the trial court did not presume those decisions regarding visitation to be in the child’s best interest, as required by the United States Constitution. Instead, the trial court made an independent decision that, because the mother had terminated the paternal grandmother’s visitation in the past, visitation should be compelled pursuant to the grandparent-visitation statute. Because the trial court made an independent decision regarding what visitation with the paternal grandmother would be in the child’s best interest, instead of presuming that the mother’s decision regarding that issue was in the child’s best interest, we conclude that the trial court’s judgment “unduly infringes upon the [mother’s] due-process rights.” J.W.J., 976 So.2d at 1043. Therefore, we reverse the trial court’s judgment and remand the case to the trial court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
THOMPSON, P.J., and THOMAS and MOORE, JJ., concur.
PITTMAN, J., concurs in the result, without writing.

. The statute provides as follows:
"(a) For the purposes of this section, the term 'grandparent' means the parent of a parent of a minor child, the parent of a minor child’s parent who has died, or the parent of a minor child's parent whose parental rights have been terminated when the child has been adopted pursuant to Section 26-10A-27, 26-10A-28, or 26-10A-30, dealing with stepparent and relative adoption.
"(b) Except as otherwise provided in this section, any grandparent may file an original action for visitation rights to a minor child if it is in the best interest of the minor child and one of the following conditions exist:
"(1) When one or both parents of the child are deceased.
"(2) When the marriage of the parents of the child has been dissolved.
"(3) When a parent of the child has abandoned the minor.
“(4) When the child was born out of wedlock.
“(5) When the child is living with both biological parents, who are still married to each other, whether or not there is a broken relationship between either or both parents of the minor and the grandparent and either or both parents have used their parental authority to prohibit a relationship between the child and the grandparent.
"(c) Any grandparent may intervene in and seek to obtain visitation rights in any action when any court in this state has before it any question concerning the custody of a minor child, a divorce proceeding of the parents or a parent of the minor child, or a termination of the parental rights proceeding of either parent of the minor child, provided the termination of parental rights is for the purpose of adoption pursuant to Sections 26-10A-27, 26-10A-28, or 26-10A-30, dealing with stepparent or relative adoption.
"(d) Upon the filing of an original action or upon intervention in an existing proceeding pursuant to subsections (b) and (c), the court shall determine if visitation by the grandparent is in the best interests of the child. Visitation shall not be granted if the visitation would endanger the physical health of the child or impair the emotional development of the child. In determining the best interests of the child, the court shall consider the following:
"(1) The willingness of the grandparent or grandparents to encourage a close relationship between the child and the parent or parents.
"(2) The preference of the child, if the child is determined to be of sufficient maturity to express a preference.
"(3) The mental and physical health of the child.
"(4) The mental and physical health of the grandparent or grandparents.
"(5) Evidence of domestic violence inflicted by one parent upon the other parent or the child. If the court determines that evidence of domestic violence exists, visitation provisions shall be made in a *730 manner protecting the child or children, parents, or grandparents from further abuse.
"(6) Other relevant factors in the particular circumstances, including the wishes of any parent who is living.
"(e) The court shall make specific written findings of fact in support of its rulings. An original action requesting visitation rights shall not be filed by any grandparent more than once during any two-year period and shall not be filed during any year in which another custody action has been filed concerning the child. After visitation rights have been granted to any grandparent, the legal custodian, guardian, or parent of the child may petition the court for revocation or amendment of the visitation rights, for good cause shown, which the court, in its discretion, may grant or deny. Unless evidence of abuse is alleged or other exceptional circumstances, a petition shall not be filed more than once in any two-year period.
"(f) If the court finds that the grandparent or grandparents can bear the cost without unreasonable financial hardship, the court, at the sole expense of the petitioning grandparent or grandparents, may appoint a guardian ad litem for the minor child.
"(g) Notwithstanding the foregoing, a grandparent may not be granted visitation with a grandchild where the parent related to the grandparent has either given up legal custody voluntarily or by court order or has abandoned the child financially unless the grandparent has an established relationship with the child and the court finds that visitation with the grandparent is in the best interests of the child.”

. The paternal grandmother is legally blind.

. Rule 4(a)(5), Ala. R.App. P., provides:
"(5) A notice of appeal filed after the entry of the judgment but before the disposition of all post-judgment motions filed pursuant to Rules 50, 52, 55, and 59, Alabama Rules of Civil Procedure, shall be held in abeyance until all post-judgment motions filed pursuant to Rules 50, 52, 55, and 59 are ruled upon; such a notice of appeal shall become effective upon the date of disposition of the last of all such motions.”

.See note 3, supra.