### A09A0704. NYANKOJO v. NORTH STAR CAPITAL ACQUISITION.
(679 SE2d 57)

PHIPPS, Judge.

North Star Capital Acquisition, as assignee of Wells Fargo Financial, brought this suit to collect the principal amount of $1,132.62 owed on an account between Elias Nyankojo, as buyer of certain pieces of furniture, and a company doing business as Leather World, as seller. In his answer to the complaint, Nyankojo challenged North Star's standing to sue him as an assignee of any debt he owed. On that ground, he filed counterclaims seeking damages against North Star for violations of the Fair Debt Collection Practices Act and the Fair Business Practices Act.

Nyankojo moved for partial summary judgment, seeking an adjudication in his favor on North Star's complaint. North Star filed a cross-motion for partial summary judgment, seeking an adjudication in its favor on Nyankojo's counterclaim on the ground that North Star had showed itself to be a valid assignee of the debt owed by Nyankojo to Leather World. Nyankojo appeals the trial court's grant of North Star's motion for partial summary judgment and its denial of his motion. For reasons that follow, we agree with Nyankojo that North Star has not shown that it is an assignee of the debt owed by him to Leather World. We, therefore, reverse the grant of partial summary judgment to North Star and the denial of partial summary judgment to Nyankojo.

Nyankojo moved for partial summary judgment in reliance on documents referred to as Exhibits A through D and an affidavit referred to as Exhibit E. Exhibits A through D were the only documents produced by North Star in response to Nyankojo's discovery requests. In support of its motion for partial summary judgment as well as its response to Nyankojo's motion, North Star produced two affidavits executed by its chief executive officer, David Paris, and documentation referred to as Exhibits 1 and 2.

> Summary judgment is proper when the record reveals no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. We review the trial court's grant of summary judgment de novo, construing the evidence and all reasonable inferences in favor of the

nonmoving party. Additionally, to prevail at summary judgment a movant who does not bear the burden of proof need only show an absence of evidence to support an essential element of the nonmoving party's case.[1]

"[O]nly admissible evidence may be considered when evaluating a motion for summary judgment."[2]

### Exhibits A and C

Exhibit A is a photocopy of a sales invoice between Elias Nyankojo and a company identified as "Leather World." It identifies Elias Nyankojo — residing in Alpharetta, Georgia — as the buyer. It identifies Leather World — along with its Norcross, Georgia address — as the seller. It shows an account number beginning with the numerals "48400529"; a date of June 1, 2003; a purchase of a sofa, love seat, chair and ottoman for a total price of $4,321.83, governed by a revolving charge agreement; a cash down payment of $1,700; financing of the remaining unpaid balance in the amount of $2,621.83; repayment due in 12 monthly billing cycles; and a signature by Elias Nyankojo. Exhibit C is a photocopy of a revolving charge agreement between Leather World and Nyankojo, also dated June 1, 2003, and signed by Nyankojo.

Exhibits A and C are sufficient to show that in June 2003 Elias Nyankojo bought four pieces of furniture from a Norcross, Georgia enterprise doing business as Leather World; that he was assigned an account number beginning with the numerals "48400529"; and that he also entered into a revolving charge agreement with Leather World through which he financed $2,621.83 of the purchase price.

There is no merit in Nyankojo's argument that these documents are inadmissible because they were not authenticated or attested to by a competent witness. It is true that

[a] proper foundation must be laid for the introduction of documentary evidence. As a general rule, a writing will not be admitted into evidence unless the offering party tenders proof of the authenticity or genuineness of the writing. There is no presumption of authenticity, and the burden of

---

[1] *Lewis v. Meredith Corp.*, 293 Ga. App. 747, 748 (667 SE2d 716) (2008) (citations omitted).

[2] *Jones v. Orris*, 274 Ga. App. 52, 57 (2) (616 SE2d 820) (2005) (footnote omitted).

proof rests upon the proffering party to establish a prima facie case of genuineness.[3]

But "[o]ur rules of evidence provide a wide variety of means by which a party may authenticate a writing. The use of circumstantial evidence is one of these methods."[4] And the content and appearance of a document are two circumstances considered when our courts analyze whether there is sufficient circumstantial evidence of authentication.[5]

Exhibits A and C are preprinted form documents with handwritten insertions that bear the name of an individual and an address, as well as a business and an address. These documents contain very specific information concerning goods purchased, and bear signatures on behalf of buyer and seller. As to these documents, the trial court was authorized to find sufficient circumstantial evidence of authentication.

### Exhibit B

Exhibit B is a photocopy of an assignment of a revolving charge agreement by Leather World. The document bears a stamp that identifies Leather World along with its address as the seller (or assignor) and contains the signature of Jeff Harris as the owner, officer, or member of the firm. But the document does not identify the assignee or the revolving charge agreement that is being assigned.

"[A] party may assign to another a contractual right to collect payment, including the right to sue to enforce the right. But an assignment must be in writing in order for the contractual right to be enforceable by the assignee."[6] And the writing must identify the assignor and assignee.[7] Exhibit B shows only that Leather World assigned an unidentified revolving charge agreement to an unidentified party.

### Exhibit D

Exhibit D is a North Star preprinted form containing only computer-generated information. It bears the name "North Star

---

[3] *Davis v. First Healthcare Corp.*, 234 Ga. App. 744, 746 (1) (507 SE2d 563) (1998) (citation and punctuation omitted).

[4] Id. (citation and punctuation omitted).

[5] Id. at 747.

[6] *Ponder v. CACV of Colorado, LLC*, 289 Ga. App. 858, 859 (658 SE2d 469) (2008) (citations and punctuation omitted).

[7] See *Southern Mut. Life Ins. Assn. v. Durdin*, 132 Ga. 495, 498 (64 SE 264) (1909); *Scott v. Cushman & Wakefield of Ga.*, 249 Ga. App. 264 (547 SE2d 794) (2001).

Capital Acquisition, LLC" and is captioned "Charge-Off Statement." It shows Nyankojo as owing a $1,132.62 balance due as of October 31, 2006 on an account numbered 48400529. As such, it amounts to a business record, inadmissible as hearsay because no foundation was laid for its admission under the Business Records Act.[8]

### Exhibit E

Exhibit E is an affidavit in which Nyankojo testified that he had never entered into any kind of agreement with North Star and had never received any notice of any assignment of any credit account or agreement entered into between himself and anyone.

### The Paris Affidavits/Exhibits 1 and 2

In his first affidavit, Paris testified that North Star is in the business of purchasing delinquent accounts receivable; that, in the regular course of its business, North Star purchased a portfolio of delinquent accounts receivable consisting of revolving credit accounts from Wells Fargo Financial pursuant to a Bill of Sale attached as Exhibit 1 to the affidavit; that Wells Fargo delivered account data to North Star in electronic format; and that an excerpt of that data appearing as Exhibit 2 to the affidavit showed the account name of Elias Nyankojo and account number 48400529.

Exhibit 1 to Paris's first affidavit is captioned "Bill of Sale and Assignment." The body of the document states that Wells Fargo and certain of its subsidiaries entered into an agreement for the sale of certain delinquent receivables to North Star upon terms and conditions stating that sellers sold, assigned, and transferred to the buyer all of the sellers' right, title, and interest in each and every one of the receivables listed in Schedule A and Schedule B to the Agreement.

Exhibit 2 to Paris's first affidavit consists of a Schedule A and a Schedule B. Schedule A consists of pages bearing only the typewritten name, address, and social security number of Nyankojo, and other information such as a balance of $1,132.62 in the right hand margins. Schedule B consists of pages bearing the same information as Schedule A but in the left hand margins.

In his second affidavit, Paris testified that in the regular course of its business, North Star purchased and was assigned all the rights, title, and interest to account 48400529 of Elias Nyankojo by Wells Fargo (as shown by the "Bill of Sale and Assignment"); that books and records of Wells Fargo and its routine factual documents relating

---

[8] See *Span v. Phar-Mor, Inc.*, 251 Ga. App. 320, 322 (1) (554 SE2d 309) (2001).

to the account were transmitted and delivered to North Star and entered into its books and records in the regular course of business; that its books and records are kept on computer to preserve the records; that he examined the books and records; and that such records (consisting of the "Bill of Sale and Assignment" along with Schedules A and B) reveal that Nyankojo applied for and was issued the account for the purpose of obtaining $2,621.83 credit to purchase goods from Leather World, ultimately failed to make timely payments on the account, and was in default in the principal amount of $1,132.62.

"We have held that testimony regarding the contents of business records, unsupported by the records themselves, by one without personal knowledge of the facts constitutes inadmissible hearsay."[9] Paris's affidavits in conjunction with the attached business records were sufficient to show only that North Star purchased a portfolio of Wells Fargo's delinquent accounts receivable, and that the portfolio included an account on which Nyankojo owed $1,132.62. The attached business records do not, however, reflect that the Nyankojo account that Wells Fargo assigned to North Star was account 48400529 on which he owed money to Leather World. And from Davis's affidavits, it appears that his knowledge of these facts was based on his review of the records and not his personal knowledge.

### Conclusions

North Star, as assignee of Wells Fargo, sued Nyankojo on an account for $1,132.62 he owed to Leather World. The elements of North Star's claim thus consisted of Nyankojo's account debt to Leather World, Leather World's assignment of the account to Wells Fargo, and Wells Fargo's account assignment to North Star. Through competent and admissible evidence, North Star showed nothing more than that, under a revolving charge agreement, Nyankojo was indebted in the amount of $2,621.83 on an account to Leather World identified by number; that Leather World assigned an unidentified revolving charge agreement to an unidentified entity; and that Wells Fargo assigned to North Star an unidentified account on which Nyankojo owed $1,132.62. This evidence, even together with the reasonable inferences from it, was insufficient to establish all essential elements of North Star's case. Remaining issues are moot.

*Judgment reversed. Smith, P. J., and Bernes, J., concur.*

---

[9] *Ingles Markets v. Martin*, 236 Ga. App. 810, 812 (513 SE2d 536) (1999); see also *Dept. of Transp. v. Shugart*, 198 Ga. App. 884, 885 (2) (403 SE2d 870) (1991) (physical precedent only); see generally *Dickson v. Dickson*, 238 Ga. 672, 674 (4) (235 SE2d 479) (1977); compare *Boyd v. Calvary Portfolio Svcs.*, 285 Ga. App. 390, 391 (1) (646 SE2d 496) (2007).

DECIDED MAY 15, 2009.

*Pekor & DeWoskin, Charles B. Pekor, Jr.*, for appellant.
*Franzen & Salzano, John H. Bedard, Jr., Joseph C. Cooling, James T. Freaney*, for appellee.